### STATE EX REL. CAREW V. EUGENE L. LEWIS, AUDITOR.

**1. AUDITOR MAY GO OUTSIDE RECORD TO ASCERTAIN FACTS.**

It is competent for the county auditor, in ascertaining the assessed valuation of a new building, where it is claimed that an error has been made by the annual assessor in returning same for taxation, to go outside the records of his office to ascertain the facts.

**2. EXTENSIVE ALTERATIONS NOT A "NEW BUILDING."**

New partitions and new decorations for walls and ceilings, as an inducement to and in accordance with the tastes of tenants in a large office building, although involving large expenditures, do not constitute a new building or structure within sec. 2807, Rev. Stat.

**3. PROPERTY OWNER PAYING TAXES ON INCREASED VALUATION—ESTOPPEL.**

A property owner having knowledge of the action of the board of equalization in making additions to the valuation of a new building as it was completed, and having regularly paid taxes in accordance therewith, should not, at the end of five years, be permitted to obtain a refunder or have the duplicate corrected by deducting additions for those years.

APPEAL—MANDAMUS.

SWING, J.

We are not agreed as to the rights of the parties as presented in this cause. In my opinion the plaintiff is not entitled to the relief prayed for.

The record facts appear to be that in 1891 the structure in question was returned by the annual assessor at $60,000 as an unfinished structure; that in 1892 the annual assessor added $30,000 to said structure, making $90,000 as the value of the structure, and that he returned the same, as appears from the "fair book," as a finished structure; that no affirmative action was taken on the return of the assessor by the board of supervisors, other than that the clerk of the board of supervisors checked off this amount in red ink, thereby indicating that it was to go to the auditor in that amount for taxation for the year 1892 (December) and 1893 (June); that in the year 1893 said structure was returned by the annual assessor as a completed structure, having added $10,000 to the previous valuation of the year 1892 of $90,000, making the return of the annual assessor $100,000 as a completed structure; that the board of supervisors added in said year to the return of the assessor the sum of $14,000, making a total valuation of $114,000.

The evidence outside of the record clearly shows, I think, that after the return of the annual assessor, in 1892, which he returned as a completed structure at a total valuation of $90,000, a committee of the board of supervisors, acting for the board, went to Mr. Carew with a view to ascertaining a proper valuation to be placed on the building as a completed structure, but they were informed by Mr. Carew that he had had trouble in erecting the building, and that it was not wholly completed; that some portions were to be erected and some painting to be done, and that if they would let it go over to the following year the building would then be fully completed, and that the board of supervisors agreed to this suggestion, and that the said board did not take any final action in

said year upon said structure as a completed structure ; that in the fol-
lowing year (1893) the annual assessor returned the valuation at $100,000,
and that in accordance with the understanding of the previous year the
board of supervisors met Mr. Carew in regard to the valuation to be
placed upon said structure as a completed structure ; that Mr. Carew
furnished said board with a statement of the costs of said structure,
which was $198,000, and that after deducting $8,000 by reason of the old
building, the cost was found to be $190,000, and that said board of super-
visors fixed the value of the structure at $114,000 adding $14,000, to
the return of the annual assessor, said sum being sixty per cent. of the
actual cost of the structure, which amount was deemed a proper sum for
taxation.

No complaint was made by Mr. Carew to the valuation as thus fixed
until this action was brought in February, 1899.

I think we all agree that the structure was substantially completed
in the spring of 1892, and should have been so returned by the annual
assessor, as was done, and the board of supervisors would have been
justified in fixing a valuation on the building in that year as a completed
structure, although there were many alterations made after that time
and during that year, amounting, as shown by the evidence, to more
than $6,000, being an amount considerably more than the ordinary
repairs would amount to ; but the evidence clearly shows that said board
did not pass on said structure as a completed structure for the reason
that it was prevailed to defer said action until the following year at the
request and solicitation of Mr. Carew, and for this reason Mr. Carew
should not now be heard to complain.

It was competent for the auditor to go outside of the record for the
facts above stated and having found them, it was his duty to refuse to
make the correction.   Lewis, Audr., v. State ex rel., 59 Ohio St., 37.

SMITH, J.

I concur with Judge Swing in the conclusion reached by him·
Mr. Carew having had knowledge of this action of the board of equaliza-
tion, and having regularly paid the tax on the valuation as thus raised,
ought not in equity at the end of five years be allowed to come in and
obtain a refunder of the amounts so paid by him; and have the duplicate
corrected by deducting therefrom the addition made with his knowledge
and practically with his consent.

GIFFEN, J.

It is sought by the relator to compel the auditor under sec. 1038,
Rev. Stat., to call the attention of the county commissioners to errone-
ous charges on the tax duplicate for the years 1893, 1894, 1895, 1896 and
1897 against the Carew building, at the southwest corner of Fifth and
Vine streets, Cincinnati, and correct the duplicate by deducting $24,000
from the valuation thereof.   In the year 1891 the assessor returned the
value of the new building at $60,000 and as unfinished.   In 1892 the
same assessor returned an additional valuation of $30,000.   In 1893
another person as assessor returned an additional valuation of the build-
ing of $10,000 and as finished.   And to this amount the board of super-
visors, sitting as an annual board of equalization, added $14,000, mak-
ing the total additions for that year $24,000, and the total valuation of
the building $114,000.   It is claimed by the relator that the assessor for
1892 returned the building as finished prior to the day preceding the

second Monday of that year, and that the board of equalization and assessor of the following year were without authority to add to the valuation of 1892 without notice to the owner.

The record in the auditor's office, known as the " fair book, " for 1892, 'n the column designated at the top " Finished Structures," has on the line describing this property and on' lines for other property above and below it, " ditto marks" under the word finished, except two lines in' which there are no marks of any kind. Whatever doubt may arise by reason of one of these blank lines being above the line in which the property of relator is described, is removed by the oral testimony, which shows that the building was, in fact, finished at that time.

It is true that in the year 1893 and subsequent years' new partitions and new decorations for the walls and ceilings were made in many of the rooms. This was done as an inducement to and in accordance with the tastes of the tenants, and was not a new building or structure within the meaning of Sec. 2807, Rev. Stat.

The building being completed prior to April, 1892, as shown by the "fair book," and the board of equalization having taken no action upon the return of the assessor for that year, it was without authority to increase the valuation for the following year, unless a new building or structure had in the meantime been placed on the premises. Sec. 2807, Rev. Stat., Lewis, Auditor, v. State, ex rel. Mullikan, 59 Ohio St., 37. It is urged, however, that " the relator had full knowledge that his property was placed upon the tax duplicate for the year 1893, and maintained thereon for subsequent years at a valuation of $114,000, and had knowledge of the return as made by the assessor for the year 1893 and of the action of the board of equalization for said year; that with said knowledge the said relator has voluntarily and without protest paid the taxes assessed each year on the sum of $114,000." But it does not appear that he had any knowledge that the assessor for 1892 had returned the building as finished, and that it was carried on the " fair book " of that year as such, and unless he had full knowledge of all the facts the payment would not be so far voluntary as to work an estoppel. Mr. Daugherty, a member of the real estate committee of the board, testifies that Mr. Carew, at the latter's store, informed them in the summer of 1892 that the building was not finished, but he also told them that the delay was occasioned in constructing the partitions and making the decorations which, we have already said, did not preclude a finding that the building was finished prior to April, 1892, and did not constitute a new structure. It does not appear that the board, in 1892, relied or acted upon such information, and besides it was itself required to ascertain from the return of the assessor and an inspection of the building whether the same was finished, and if so to make such correction in the valuation as was just and proper; but it failed to act on such return, and in 1893 proceeded, together with the assessor, as though the record of the previous year disclosed an unfinished structure. While it seems clear from the evidence that the sum of $114,000 was a reasonable valuation, yet the question before us is whether that valuation was placed on the duplicate by authority of law, and if not, was it such an error as the auditor may correct. The error consisted in the assessor and the board treating the structure as unfinished, while the record of the previous year showed that it was finished, and the correction by the auditor, requiring only the deduction of the sum by which the valuation wss increased in 1893,

contrary to the statutes, was merely clerical.   Insurance Co. v. Cappeller, 38 Ohio St., 560 ;  State ex rel. Poe, v. Raine, 47 Ohio St., 447.

It is further claimed that the testimony of Mr. Daugherty shows that the relator requested the board to postpone action until 1893 ; that the latter did as requested, and that the relator was thereby estopped to question the authority of ihe board.   No such issue was tendered, and the testimony was not relevant to any fact in issue.

The law of pleading an estoppel is stated most favorably for the defendant in Schurtz v. Colvin et al. 55  O. St., 274, to-wit :  " The rule that one who would avail himself of an estoppel must plead it, is fairly complied with where, upon the whole case made by the pleadings, it' appears that the party intends to · rely on it if certain facts averred by the other party, and denied by him for want of knowledge, are made to appear.   And in any case the rule only applies where the party has had an opportunity to plead it."

· The defendant in this case pleaded as an estoppel the knowledge of relator of the action of the board in 1893, and his voluntary payment of taxes thereafter; but there is no averment that he requested or induced the board to delay action in 1892.   There was no want of opportunity to plead it.   There is reference to it in the deposition of Mayor Foley, another member of the real estate committee.   There is no memorandum of it on the minutes of the board.   The necessity, therefore, of advising the relator of this defense is apparent, and the evidence in support thereof should not be considered, nor can the pleading be now amended to conform to the facts found.

*Miller Outcalt*, for the relator.

*Wilson, Cosgrave & Jones*, for the auditor.